IN THE
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT
_____

No. 20-2139


UNITED STATES OF AMERICA,
Plaintiff-Appellee,


-vs-


IAN AZA JEROME OWENS,
Defendant-Appellant.


_____


Appeal from the United States District Court
For the Western District of Michigan
Southern Division


_____


**APPELLANT'S BRIEF**

SHARON A. TUREK
Federal Public Defender

PEDRO CELIS
Research & Writing Specialist
Office of the Federal Public Defender
50 Louis, N.W., Suite 300
Grand Rapids, Michigan 49503
(616) 742-7420

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…..…………………………………………………iii

ORAL ARGUMENT REQUESTED……………………………………………vi

JURISDICTIONAL STATEMENT…………………………………………..1

STATEMENT OF THE ISSUES…………………………………………..1

    I.    Whether the district court erred by refusing to consider the changes in 18 U.S.C. § 924(c) since Ian Owens's sentencing when determining whether extraordinary and compelling reasons supported reducing his sentence…2

    II.    Whether the district court abused its discretion when it failed to conduct an individualized analysis of Mr. Owens's circumstances to determine whether they were extraordinary and compelling……..………………….2

STATEMENT OF THE CASE…………………………………………..2

    I.    Underlying Offenses and Sentence………………………………..2

    II.    Motion for a Reduced Sentence.……………………………………5

SUMMARY OF THE ARGUMENT…………………………………………7

STANDARDS OF REVIEW…………………………………………8

ARGUMENT……………………………………………………………9

    I.    Introduction………………………………………………………...9

            1. Section 603(b) of the First Step Act.………………………..10
            2. Section 403 of the First Step Act…………………………….11

    II.    The court erroneously treated Mr. Owens's motion as if it fell under § 403 of the First Step Act…….…………………………12

    III.    Mr. Owens's motion falls within § 3582(c)(1)(A)(i)'s intended purpose…………………………………………………………14

IV.    The district court abused its discretion by failing to consider Mr. Owens's individual circumstances...……………………………………15

V.    Mr. Owens's circumstances provide extraordinary and compelling reasons to reduce his sentence………………………………………17

CONCLUSION...……………………………………………………………23

COUNSEL'S CERTIFICATE……………………………………………….24

CERTIFICATE OF SERVICE……………………………………………....25

APPELLANT'S DESIGNATION OF RECORD FROM DISTRICT COURT…..26

# TABLE OF AUTHORITIES

## Cases

*Bell v. New Jersey*, 461 U.S. 773 (1983) ....................................................19

*Deal v. United States*, 508 U.S. 129 (1993)..............................................18

*Elgharib v. Napolitano*, 600 F.3d 597 (6th Cir. 2010) ..............................9

*Gonzalez v INS*, 996 F.2d 804, (6th Cir. 1993)...........................................9

*Red Lion Broad. Co. v. F.C.C.*, 395 U.S. 367 (1969)..............................19

*United States v. Booker*, 543 U.S. 220 (2005)...........................................4

*United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) ............................ 11, 14, 16

*United States v. Bryant*, No. CR 95-202-CCB-3,
    2020 WL 2085471 (D. Md. Apr. 30, 2020)............................................. 13, 21

*United States v. Geerken*, 506 F.3d 461 (6th Cir. 2007) ...........................19

*United States v. Holloway*, 68 F. Supp. 3d 310 (E.D.N.Y. 2014) ............6

*United States v. Johnson*, No. CR 02-80810, 2017 WL 3531397 ............5

*United States v. Jones*, ___ F.3d ___, No. 20-3701,
    2020 WL 6817488, at *1 (6th Cir. Nov. 20, 2020)………………9, 10, 11, 16, 17

*United States v. Maumau*, No. 2:08-CR-00758-TC-11,
    2020 WL 806121(D. Utah Feb. 18, 2020)..............................................20

*United States v. McCoy*, ___ F.3d ___, No. 20-6821, 2020
    WL 7050097 (4th Cir. Dec. 2, 2020)........................................... 12, 13, 16,17 20

*United States v. O'Bryan*, No. 96-10076-03-JTM,
    2020 WL 869475 (D. Kan. Feb. 21, 2020).............................................20

*United States v. Owens*, 426 F.3d 800 (6th Cir. 2005) ..............................4

*United States v. Pollard*, No. CR 10-633-1, 2020,
   WL 4674126 (E.D. Pa. Aug. 12, 2020) ........................................................20

*United States v. Redd*, 444 F. Supp. 3d 717 (E.D. Va. 2020).................................20

*United States v. Ruffin*, 978 F.3d 1000 (6th Cir. 2020) ............................................9

*United States v. Sorrells*, No. CR 02-80810, 2017 WL 3531398............................4

*United States v. Urkevich*, No. 8:03CR37,
   2019 WL 6037391 (D. Neb. Nov. 14, 2019) ......................................................20

*United States v. Wiseman*, 932 F.3d 411 (6th Cir. 2019) ........................................12

*United States v. Young*, 458 F. Supp. 3d 838 (M.D. Tenn. 2020) ..........................20

## Statutes

18 U.S.C. § 2213(d) ...................................................................................................3

18 U.S.C. § 3231 .......................................................................................................1

18 U.S.C. § 3582(c)(1)(A)……………………………………………………*passim*

18 U.S.C. § 3582(c)(1)(A)(i) ........................................................... *passim*

18 U.S.C. § 924(c) ........................................................................... *passim*

28 U.S.C. § 1291 .......................................................................................................1

First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018)…………*passim*

## Other Authorities

*U.S. Sentencing Comm'n, Fifteen Years of Guidelines Sentencing* ........................18

*U.S. Sentencing Comm'n October 2011 Report to the Congress: Mandatory Minimum Penalties for Firearms Offenses in the Federal Criminal Justice System* ........................................................................................19

*Report to Congress: Mandatory Minimum Penalties in the
Federal Criminal Justice System* ....................................................................... 18, 19

S. Rep. No. 98-225 (1983) ................................................................................. 14, 15

## Rules

Sixth Circuit Rule 30(g)(1)(A)................................................................................26

Sixth Circuit Rule 32(a)..........................................................................................24

Sixth Circuit Rule 34(a)……………………………………………………………vi

## Federal Rules

Federal Rule of Appellate Procedure 32(a)(7)(C)....................................................24

Federal Rule of Appellate Procedure 34(a)(1)....................................................... iv

## ORAL ARGUMENT REQUESTED

Under Federal Rule of Appellate Procedure 34(a)(1) and Sixth Circuit Rule 34(a), Ian Owens requests oral argument. This case involves important questions concerning courts' authority and discretion in determining whether extraordinary and compelling circumstances can support a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). Because this area of law is rapidly developing, the presence of counsel before the Court to comment upon the issues and respond to inquiries may assist the Court's consideration of the issues.

## JURISDICTIONAL STATEMENT

Mr. Owens appeals from the November 9, 2020 order of the district court denying his motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). The district court had subject-matter jurisdiction pursuant to 18 U.S.C. § 3231. This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291, which confers jurisdiction on the courts of appeals from final decisions of the district court. Mr. Owens filed his Notice of Appeal on November 19, 2020. (R. 154, Notice of Appeal, PageID.239).

## STATEMENT OF THE ISSUES

Ian Owens moved the district court to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A), the "compassionate release" statute. That statute allows district courts to reduce sentences when extraordinary and compelling reasons support a reduction.

Mr. Owens sought compassionate release on three grounds. He argued that the "stacking" provision under 18 U.S.C. § 924(c), which resulted in him receiving 105 years of mandatory, consecutive time on five § 924(c) convictions, has been repudiated by Congress and now would result in a sentence of 25 years. He also argued that his sentence was grossly disproportionate to co-conspirators' sentences because he exercised his Sixth Amendment right to trial. Finally, he argued that his significant rehabilitative efforts should be considered.

1

The district court rejected Mr. Owens's first argument since the change in §
924(c) has not been made retroactive. The court failed to address the other grounds,
either individually or in combination.

This appeal presents the following issues:

I. Whether the district court erred by refusing to consider the changes in 18
U.S.C. § 924(c) since Ian Owens's sentencing when determining whether
extraordinary and compelling reasons supported reducing his sentence.

II. Whether the district court abused its discretion when it failed to conduct an
individualized analysis of Mr. Owens's circumstances to determine whether they
were extraordinary and compelling.

## STATEMENT OF THE CASE

### I.    Underlying Offenses and Sentence

Ian Owens is 42 years old. For crimes that began when he was 22, he was
sentenced to die in prison. The sentencing court had no other choice—due to Mr.
Owens's five convictions under 18 U.S.C. § 924(c), he faced a total of 105
mandatory years in prison, on top of the discretionary portion of his sentence.

Mr. Owens deserved a lengthy sentence; although no one was seriously
injured or killed, he played a key role in several violent crimes that involved
firearms. *See* (R. 93, Sealed Presentence Investigation Report, p.4-14). However, the
majority of Mr. Owens's sentence was not a result of the terrible choices he made

while committing his crimes. Rather, most of his sentence resulted from another decision he made—his decision to go to trial.

Had Mr. Owens pleaded guilty, he would have faced a much lower sentence. The government originally charged Mr. Owens with a single count of bank robbery. (R. 8, Indictment, JA00020). If he had cooperated with the government, he could have pleaded guilty to this single count. (R. 149, Government's Response to Motion for Sentence Reduction, PageID.200 n.8). This would have resulted in a statutory maximum of 25 years. 18 U.S.C. § 2213(d).

Because he refused to plead guilty, the government kept charging Mr. Owens with more counts. The first superseding indictment added three counts of bank robbery, one count of conspiracy, and three § 924(c) counts. (R. 20, First Superseding Indictment, JA00021-29). The second superseding indictment added another conspiracy count, two felon-in-possession counts, and one carjacking count. (R. 39, Second Superseding Indictment, JA00030-43). Three weeks before the start of trial, the third superseding indictment added two more § 924(c) charges, for a total of five charges under that section. (R. 51, Third Superseding Indictment, JA00044-59).

Even shortly before trial, Mr. Owens could have avoided much of the mandatory prison time. His attorney informed him of a plea offer that would have required him to plead guilty to only two of the § 924(c) charges, sparing him 75

3

years of mandatory minimums.[1] However, Mr. Owens chose to go to trial, and was convicted of all but one count, including all five § 924(c) counts. (R. 70, Jury Verdict, JA00060-63).

Under the then-mandatory sentencing guidelines, the court sentenced Mr. Owens to 151 months on the counts without mandatory minimum sentences, followed by 1260 months on the § 924(c) charges. *United States v. Owens*, 426 F.3d 800, 809 (6th Cir. 2005). On remand after *United States v. Booker*, 543 U.S. 220 (2005), the court imposed a sentence of 120 months on the discretionary portion of the sentence, followed by the mandatory 1260 months on the § 924(c) counts. (R. 144, Resentencing Transcript, PageID.114-125). Thus, Mr. Owens was sentenced to a total of 115 years in prison, with 105 of those years as a result of the § 924(c) convictions.

Mr. Owens's co-conspirators—who all pleaded guilty—received much lower sentences. Darrell Jackson was sentenced to 21 months of imprisonment. (R. 93, Sealed Presentence Investigation Report, p.6). Adika Sutton received a sentence of 33 months' incarceration. *Id.* Lionel Sorrells—a career offender who committed another bank robbery in the Eastern District of Michigan—was sentenced to 308 months. *Id.*; *United States v. Sorrells*, No. CR 02-80810, 2017 WL 3531398, at *1

---

[1] In its response to Mr. Owens's motion for compassionate release, the government confirmed this plea offer. (R. 149, Government's Response to Motion for Sentence Reduction, PageID.200 n.8).

4

(E.D. Mich. Aug. 17, 2017). Lamar Johnson—another career offender who committed several other robberies in the Eastern District of Michigan—received a total of 39 years of imprisonment in two separate cases in that district.[2] (R. 93, Sealed Presentence Investigation Report, p.6); *United States v. Johnson*, No. CR 02-80810, 2017 WL 3531397, at *1 (E.D. Mich. Aug. 17, 2017).

Thus, Mr. Owens's case exemplifies the then-common practice of using multiple § 924(c) charges "as a means of inducing guilty pleas." (R. 148-2, Letter from John Gleeson, PageID.173). Prosecutors would bring multiple § 924(c) charges and dismiss some in exchange for a guilty plea. *Id.* Or as in Mr. Owens's case, prosecutors would charge additional § 924(c) counts after the defendant rejected a plea offer. *Id.* "Almost to a person, the inmates serving extremely long sentences due to the stacking of § 924(c) counts went to trial, and their sentences are often grossly disproportionate to the sentences of others charged with stacked § 924(c) counts who pled guilty." *Id.* at PageID.174.

## II.    Motion for a Reduced Sentence

In February 2019, Mr. Owens filed a pro se motion with the district court, asking the court and the United States Attorney's office to consider vacating his

---

[2] Compared to Sorrells and Johnson, Mr. Owens's criminal history was relatively minor. At the time of his offense, he had never gone to prison and had only been to jail twice, once for a one-criminal-history-point offense and once for a two-criminal-history point offense. (R. 93, Sealed Presentence Investigation Report, p.22-24).

stacked § 924(c) convictions. (R. 138, Pro Se Motion, PageID.81-90). This remedy is known as *Holloway* relief, following *United States v. Holloway*, 68 F. Supp. 3d 310 (E.D.N.Y. 2014), and its progeny. In support of his request, Mr. Owens cited the First Step Act's amendment of § 924(c). (R. 138, Pro Se Motion, PageID.82-83). After the amendment, defendants like Mr. Owens are no longer subject to a 25-year penalty for a second conviction in the same indictment. Thus, Mr. Owens would face a dramatically shorter sentence if he were sentenced today.

The district court appointed counsel to represent Mr. Owens, and ordered counsel to "file a supplemental brief addressing the import, if any, of the First Step Act of 2018 on Defendant's sentence." (R. 143, Order Appointing Counsel and Setting Briefing Schedule, PageID.96).

Mr. Owens subsequently submitted a request for compassionate release under § 3582(c)(1)(A) to the warden of his facility. (R. 148, Brief in Support of Motion for Sentence Reduction, PageID.146). After more than 30 days had elapsed, Mr. Owens moved the district court for compassionate release. *Id.*

Mr. Owens argued that his case presented extraordinary and compelling reasons warranting a reduced sentence for three reasons. First, Mr. Owens received an unusually long sentence under a statutory provision that Congress has since found too punitive. Second, Mr. Owens received an effective life sentence largely as a penalty for exercising his constitutional right to go to trial. And third, Mr. Owens

has a truly remarkable record of rehabilitation. (R. 148, Brief in Support of Motion for Sentence Reduction, PageID.146-152).

In a short order, the district court denied Mr. Owens's motion. (R. 153, Order Denying Motion, PageID.236-238). The district court held that Congress had declined to make the changes to § 924(c) retroactive. *Id.* at PageID.237. Accordingly, the court held that considering the change in the law as part of "extraordinary and compelling reasons" would "circumvent congressional intent and guidance from the Circuit Court." *Id.* at 238.

Mr. Owens timely appealed. (R. 148, Notice of Appeal, PageID.239).

## SUMMARY OF THE ARGUMENT

The district court erred when it declined to consider the changes to § 924(c) in deciding Mr. Owens's motion. The district court determined that Congress had not made these changes retroactive, so considering them in its "extraordinary and compelling" analysis would "circumvent congressional intent and guidance from the Circuit Court." (R. 153, Order Denying Motion, PageID.152-153).

However, whether a change in the law is directly retroactive is not relevant to whether it can be a factor in extraordinary and compelling circumstances. The fact that Mr. Owens is serving a sentence that is far longer than Congress itself views as necessary is a legitimate consideration in determining whether extraordinary and compelling reasons exist.

7

The court reached its erroneous conclusion by focusing on the legislative intent behind the changes to § 924(c) rather than the legislative intent behind the compassionate release statute. If the district court had examined the compassionate release statute, it would have determined that it was always intended to allow for the later review of unusually long sentences, like the one in the present case.

Finally, the district court abused its discretion by failing to consider Mr. Owens's individual circumstances. Rather than examining Mr. Owens's circumstances—including his extraordinarily long sentence, the disparity between his sentence and his co-conspirators', and Mr. Owens's compelling record of rehabilitation—the district court made its determination on a categorical basis, relying solely on the fact that Congress had not made the changes to § 924(c) directly retroactive.

Accordingly, this Court should remand the case so that the district court may properly consider Mr. Owens's individual circumstances—including the fact that a current defendant charged with the same offenses would face a sentence of less than half the time—in determining whether extraordinary and compelling reasons support reducing his sentence.

## STANDARDS OF REVIEW

What factors may properly be considered in determining whether "extraordinary and compelling reasons" support a reduced sentence turns on the

legal interpretation of 18 U.S.C. § 3582(c)(1)(A)(i). This Court reviews questions of statutory interpretation de novo. *Elgharib v. Napolitano*, 600 F.3d 597, 601 (6th Cir. 2010).

This Court reviews a district court's decision denying a sentence reduction for abuse of discretion. *United States v. Ruffin*, 978 F.3d 1000, 1005-06 (6th Cir. 2020). A legal mistake, "such as a misreading of the extraordinary-and-compelling-reasons requirement" is an abuse of discretion. *Id.* Finally, a failure to exercise discretion may constitute an abuse of discretion. *Gonzalez v INS*, 996 F.2d 804, 811 & n. 8 (6th Cir. 1993).

## ARGUMENT

### I.    Introduction

In December 2018, Congress enacted the First Step Act. It contains two provisions relevant here. First, § 603(b) "redefined the compassionate release landscape." *United States v. Jones*, ___ F.3d ___, No. 20-3701, 2020 WL 6817488, at *1 (6th Cir. Nov. 20, 2020). Second, § 403 corrected the interpretation of 18 U.S.C. § 924(c) by the Supreme Court that required the imposition of enhanced § 924(c) sentences for "second or successive" § 924(c) convictions even when the defendant had no prior, final § 924(c) conviction at the time of the offense—the highly-criticized "stacking" practice that resulted in the excessive sentence imposed on Mr. Owens.

9

*1. Section 603(b) of the First Step Act*

"In the Sentencing Reform Act of 1984, Congress abolished federal parole and forbade the federal courts from 'modify[ing] a term of imprisonment once it has been imposed[.]'" *Jones*, 2020 WL 6817488, at *3 (quoting Sentencing Reform Act of 1984, Pub. L. No. 98–473, Title II, ch. 2, § 212(a), 98 Stat. 1837, 1998 (enacting 18 U.S.C. § 3582(c))). However, at the same time, "Congress carved out an exception known as compassionate release: federal courts could reduce a sentence when 'warrant[ed]' by 'extraordinary and compelling reasons[.]'" *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A) (1984)).

Prior to the First Step Act, the Sentencing Commission and the Bureau of Prisons (the BOP) prevented compassionate release from operating as Congress intended. In the Sentencing Reform Act, Congress had also ordered the Sentencing Commission to define extraordinary and compelling reasons warranting a reduced sentence. Sentencing Reform Act of 1984, § 217(a), 98 Stat. at 2023 (enacting 28 U.S.C. § 994(s)). However, the Commission has never obeyed this directive. *Jones*, 2020 WL 6817488, at *4. The BOP also frustrated congressional intent by rarely exercising its authority to file compassionate release motions on behalf of inmates. *Id.*

Section 603(b) of the First Step Act, titled "Increasing the Use and Transparency of Compassionate Release," amended § 3582(c)(1)(A) to dramatically

expand district courts' authority to reduce sentences in cases presenting extraordinary and compelling reasons. First Step Act of 2018, Pub. L. No. 115–391, § 603(b), 132 Stat. 5194, 5239 (Dec. 21, 2018). This "title itself speaks volumes about Congress's intent." *Jones*, 2020 WL 6817488, at *8.

"Frustrated with the BOP's conservative approach, a bipartisan coalition in Congress sought to boost grants of compassionate release." *Jones*, 2020 WL 6817488, at *4. The amendment removed the BOP as the compassionate release gatekeeper, allowing inmates to file compassionate release motions after exhausting their administrative remedies or waiting 30 days after submitting their request to the warden. *Id.*

Because the Sentencing Commission has not published an applicable policy statement, district courts currently have "full discretion" to determine whether extraordinary and compelling reasons justify compassionate release. *Id.* at *7. "It bears remembering that compassionate release is a misnomer. 18 U.S.C. § 3582(c)(1)(A) in fact speaks of sentence reductions." *United States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020). Thus, a district court can reduce a sentence without ordering immediate release. *Id.*

 2.  *Section 403 of the First Step Act*

 Section 403 of the First Step Act, titled a "Clarification of Section § 924(c)," made clear that Congress always intended 18 U.S.C. § 924(c) to be a true recidivist

statute. It amended § 924(c) so that the enhanced, 25-year minimum is mandated only by a § 924(c) conviction that occurs after a prior such conviction has become final. First Step Act § 403, 132 Stat. at 5221-22. Accordingly, today, defendants like Mr. Owens would receive a five-year term on each § 924(c) count (or a seven-year term if the jury found that the firearm was brandished).

## II. The Court erroneously treated Mr. Owens's motion as if it fell under § 403 of the First Step Act

The district court erroneously treated Mr. Owens's motion as if he were trying to achieve retroactive application of § 403 of the First Step Act. The district court held that "Congress expressly declined to make the changes to § 924(c) retroactive, and the Sixth Circuit has implicitly recognized as much." (R. 153, Order Denying Motion, PageID.236-238) (citing *United States v. Wiseman*, 932 F.3d 411, 417 (6th Cir. 2019)). The court then "decline[d] to use the 'extraordinary and compelling reasons' language to circumvent congressional intent and guidance from the Circuit Court." *Id.* at PageID.237-238.

But whether relief is unavailable under one statute has nothing to do with whether relief is available under another statute. "Indeed, the very purpose of § 3582(c)(1)(A) is to provide a 'safety valve' that allows for sentence reductions when there is not a specific statute that already affords relief but 'extraordinary and compelling reasons' nevertheless justify a reduction." *United States v. McCoy*, ___ F.3d ___, No. 20-6821, 2020 WL 7050097, at *11 (4th Cir. Dec. 2, 2020). Thus,

whether a change in the law can be an extraordinary and compelling circumstance cannot turn on whether the change in the law is directly retroactive. If the change were directly retroactive, there would be no need to seek relief under § 3582(c)(1)(A).

Accordingly, "[t]he fact that Congress chose not to make § 403 of the First Step Act categorically retroactive does not mean that courts may not consider that legislative change in conducting their individualized reviews of motions for compassionate release under § 3582(c)(1)(A)(i)." *McCoy*, 2020 WL 7050097, at *11. Rather, there is "nothing inconsistent about Congress's paired First Step Act judgments: that 'not all defendants convicted under § 924(c) should receive new sentences,' but that the courts should be empowered to 'relieve some defendants of those sentences on a case-by-case basis.'" *Id.* (quoting *United States v. Bryant*, No. CR 95-202-CCB-3, 2020 WL 2085471, at *3 (D. Md. Apr. 30, 2020), *aff'd sub nom. United States v. McCoy*, No. 20-6821, 2020 WL 7050097 (4th Cir. Dec. 2, 2020)).

Accordingly, "courts legitimately may consider, under the 'extraordinary and compelling reasons' inquiry, that defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair." *McCoy*, 2020 WL 7050097, at *10.

Here, the district court erred when it refused to consider this change in the law as it applied to Mr. Owens. Nothing in either § 403 of the First Step Act or this

13

Court's prior cases indicates that the change to § 924(c) cannot constitute part of an extraordinary and compelling reason supporting a reduced sentence. Thus, the district court erred when it relied on "congressional intent and guidance from the Circuit Court" to decline to consider the change in the law as part of the relevant circumstances.

### III.  Mr. Owens's motion falls within § 3582(c)(1)(A)(i)'s intended purpose

Because Mr. Owens brought his motion under § 3582(c)(1)(A)(i), the district court should have focused its interpretation on that statute. Had the court done so, it would have found that Mr. Owens's motion falls within § 3582(c)(1)(A)(i)'s intended purpose.

Congress originally intended § 3582(c)(1)(A)(i) to allow the later review of lengthy sentences. *United States v. Brooker*, 976 F.3d 228, 238 (2d Cir. 2020). The Senate Report states that the statute allows for "later review of sentences in particularly compelling situations," such as the reduction "of an unusually long sentence." S. Rep. No. 98-225, at 121 (1983). In abolishing parole and creating a "completely restructured [G]uidelines sentencing system," *id.* at 52, 53 n.196, Congress recognized the need for judicial authority to reduce at least some sentences:

> The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness,

14

> *cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence*, and some cases in which the sentencing guidelines for the offense of which the defendant was convicted have been later amended to provide a shorter term of imprisonment.

*Id.* at 55-56 (emphasis added). This authority empowered judges to reduce a term of imprisonment when justified by extraordinary and compelling reasons that previously could have been addressed through the (now abolished) parole system, while keeping "the sentencing power in the judiciary where it belongs." *Id.* at 121. Put another way, rather than continue to allow the Parole Commission to conduct an opaque review of every federal sentence, Congress allowed for judicial review of only a narrow subset: those unusual cases presenting extraordinary and compelling circumstances warranting relief.

Accordingly, Mr. Owens's case falls squarely within § 3582(c)(1)(A)(i)'s intended purpose. It allows the court to review his unusually long sentence to see if extraordinary and compelling reasons warrant a reduction.

## IV.  The district court abused its discretion by failing to consider Mr. Owens's individual circumstances

Finally, the district court abused its discretion by failing to consider Mr. Owens's individual circumstances in determining whether extraordinary and compelling reasons supported reducing his sentence. Rather than considering Mr. Owens's circumstances, the district court made its decision categorically, based on § 403's lack of retroactivity.

15

"The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" *Brooker*, 976 F.3d at 237-38 (quoting 28 U.S.C. § 994(t)) (alteration in original). Additionally, after the First Step Act, there is no applicable policy statement that defines extraordinary and compelling circumstances in cases where an individual moves for compassionate release. *Jones*, 2020 WL 6817488, at *7. Thus, district courts have "full discretion" to determine whether extraordinary and compelling circumstances exist. *Id.* at *9.

Determining whether extraordinary and compelling reasons exist requires district courts to "conduct individualized inquiries." *McCoy*, 2020 WL 7050097, at *12. Thus, in exercising their discretion, courts must "consider the possible relevance" of all factors. *Brooker*, 976 F.3d at 238.

Accordingly, the district court here was required to consider all of Mr. Owens's circumstances in determining whether extraordinary and compelling reasons existed. However, the district court failed to consider any of the factors raised by Mr. Owens other that the fact that he was sentenced to more than one § 924(c) conviction.

Moreover, the district court's explanation was inadequate. District courts must "write more extensively in § 3582(c)(1)(A) decisions where the record bears little indication that the district judge considered all the defendant's evidence and

16

arguments before granting or denying compassionate release." *Jones*, 2020 WL 6817488, at *11. This obligation is "imperative when the original sentencing judge and the compassionate release decision judge are different persons," as in the present case. *Id.* If the court did consider Mr. Owens's individual circumstances, it failed to leave any record of it. Accordingly, the case must be reversed and remanded for that reason alone.

### V. Mr. Owens's circumstances provide extraordinary and compelling reasons to reduce his sentence

Examining Mr. Owens's circumstances demonstrates that extraordinary and compelling reasons justify reducing his sentence. Many facts distinguish Mr. Owens from the typical defendant who would face a lower sentence under current law.

First, "[t]he First Step Act's clarification of § 924(c) resulted in not just any sentencing change, but an exceptionally dramatic one." *McCoy*, 2020 WL 7050097, at *10. As applied to Mr. Owens, his mandatory consecutive sentence would be reduced from 105 years to 25 years.[3]

---

[3] The government may disagree. The government argued that there was sufficient evidence to apply enhanced penalties on all § 924(c) counts, arguing that Mr. Owens would receive "two consecutive 10-year sentences followed by three consecutive 7-year sentences." (R. 149, Government's Response to Motion for Sentence Reduction, PageID.204). This argument ignores the fact that Mr. Owens did in fact receive a sentence of five years for his first § 924(c) conviction. Moreover, even under the government's calculations, Mr. Owens would face a sentence 64 years shorter than his current sentence—a dramatic reduction by any measure.

Second, § 924(c)'s history is compelling. It appears that Congress intended for the increased penalties for a second or subsequent § 924(c) charge to be reserved for defendants who had already been sentenced under the provision and once again committed a crime of violence with a firearm. *Deal v. United States*, 508 U.S. 129, 137-146 (1993) (Stevens, J., dissenting). In fact, for the first 19 years of § 924(c)'s existence, even the government construed it as reserving its increased penalties for recidivists. *Id.* at 146.

Additionally, this practice of "stacking" enhanced § 924(c) charges in a first offense was condemned for years. And it was disproportionately used against African American men like Mr. Owens.[4]

---

[4] In its 2004 report entitled *Fifteen Years of Guidelines Sentencing*, the Commission wrote that Black defendants had been disproportionately subjected to § 924(c) "stacking" for decades, accounting for 48% of offenders who qualified for a charge under § 924(c), but representing 56% of those actually charged and 64% of those convicted. The Commission recognized that these racial differences create an impression of "unfairness and unwarranted disparity" that is difficult to refute. The report can be found at www.ussc.gov/sites/default/files/pdf/research-and-publications/research-projects-and-surveys/miscellaneous/15-year-study/15_year_study_full.pdf

In its October 2011 report entitled *Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System*, the Commission observed that § 924(c) stacking continued to be applied disproportionately to Black offenders. It recommended that Congress (1) lower the mandatory sentences in § 924(c); (2) make the enhanced sentences for second or subsequent convictions applicable only when the first § 924(c) conviction occurred in a prior case; and (3) allow for concurrent sentences on "stacked" counts. These amendments are necessary, the Commission stated, to remedy the "excessively severe and disproportionate" sentences in the cases. *Id.* at 359. The report can be found here:

Section 924(c)'s amendment is also remarkable. The fact that Congress chose to "clarify" rather than simply amend § 924(c) is significant. A clarifying amendment is one that explains the original meaning of the amended text. *See United States v. Geerken*, 506 F.3d 461, 465 (6th Cir. 2007). Although "the view of a later Congress does not establish definitively the meaning of an earlier enactment,[] it does have persuasive value." *Bell v. New Jersey*, 461 U.S. 773, 784 (1983). "Subsequent legislation declaring the intent of an earlier statute is entitled to great weight in statutory construction." *Red Lion Broad. Co. v. F.C.C.*, 395 U.S. 367, 380-81 (1969). Thus, the fact that Congress explicitly clarified—rather than simply amended—§ 924(c) makes clear that Congress never intended it to result in sentences like the one at issue here.

---

www.ussc.gov/research/congressional-reports/2011-report-congress-mandatory-minimum-penalties-federal-criminal-justice-system

In its March 2018 report entitled *Mandatory Minimum Penalties for Firearms Offenses in the Federal Criminal Justice System*, the Commission reported that Black offenders continued to represent a majority of offenders convicted of an offense under § 924(c). It also noted that the prevalence of Black offenders is even more pronounced for offenders convicted of multiple counts under § 924(c), accounting for 70.5% of those convicted. The report can be found here: www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2018/20180315_Firearms-Mand-Min.pdf

19

Third, Mr. Owens's individual circumstances are compelling. Many district courts have determined that circumstances like Mr. Owens's are extraordinary and compelling.[5]

The Fourth Circuit's recent decision in *United States v. McCoy*, ___ F.3d ___ No. 20-6821, 2020 WL 7050097 (4th Cir. Dec. 2, 2020), is particularly instructive on this point. In that case, the Fourth Circuit consolidated the appeals from four grants of compassionate release to defendants who had been subject to stacked §

---

[5] *See, e.g., United States v. Pollard*, No. CR 10-633-1, 2020 WL 4674126, at *6 (E.D. Pa. Aug. 12, 2020) (concluding that First Step Act's changes to § 924(c) sentencing regime is "an appropriate consideration in deciding whether to grant compassionate release" and granting defendant's motion for sentence reduction); *United States v. Young*, 458 F. Supp. 3d 838, 848 (M.D. Tenn. 2020) ("The court finds that the drastic change effected by the First Step Act's amendment of § 924(c) constitutes an extraordinary and compelling reason for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A), at least when considered in conjunction with the other reasons discussed below."); *United States v. O'Bryan*, No. 96-10076-03-JTM, 2020 WL 869475, at *1 (D. Kan. Feb. 21, 2020) (framing the legal question as, "[d]oes the FSA's modification of the § 924(c) sentencing regime constitute an 'extraordinary and compelling reason' for a sentencing reduction?", and answering in the affirmative); *United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *7 (D. Utah Feb. 18, 2020) ("[T]his court concludes that the changes in how § 924(c) sentences are calculated is a compelling and extraordinary reason to provide relief on the facts present here."); *United States v. Redd*, 444 F. Supp. 3d 717, 723-23 (E.D. Va. 2020) ("These [legislative changes to § 924(c) stacked sentences as a result of the First Step Act] are, the Court finds, extraordinary and compelling developments that constitute extraordinary and compelling reasons that warrant a reduction to Mr. Redd's sentence of incarceration."); *United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391, at *4 (D. Neb. Nov. 14, 2019), appeal dismissed, No. 20-1603, 2020 WL 5642024 (8th Cir. Apr. 1, 2020) ("A reduction in his sentence is warranted by extraordinary and compelling reasons, specifically the injustice of facing a term of incarceration forty years longer than Congress now deems warranted for the crimes committed.").

924(c) penalties. The Fourth Circuit affirmed the grants, holding that "the severity of a § 924(c) sentence, combined with the enormous disparity between that sentence and the sentence a defendant would receive today, can constitute an 'extraordinary and compelling' reason for relief under § 3582(c)(1)(A)." *Id.* at *10 (quoting *Bryant*, 2020 WL 2085471, at *3).

Importantly, the district courts made their decisions based on "individualized assessments." *Id.* "[T]he defendants' relative youth—from 19 to 24 years old—at the time of their offenses" was an important factor, as was the fact that the defendants had already served substantial sentences: "from 17 to 25 years." *Id.* at *11. Additionally, the defendants had relatively "minimal criminal history." *Id.* at *5. Finally, the defendants all had a record of "exemplary behavior and rehabilitation in prison." *Id.* at *1.

Mr. Owens fits in well with these defendants. He was 22 and 23 years old when he committed his offenses. (R. 93, Sealed Presentence Investigation Report, p.3-5). He has already served a sentence of over 21 years in prison, after accounting for good-time credits. (R. 148, Brief in Support of Motion for a Sentence Reduction, PageID.153). At the time of his offense, he had never gone to prison and had only been to jail twice, once for a one-criminal-history-point offense and once for a two-criminal-history point offense. (R. 93, Sealed Presentence Investigation Report, p.22-24).

21

Finally, Mr. Owens's record of rehabilitation is truly remarkable. Facing a 115-year sentence, it would have been easy for Mr. Owens to give up on life. With good-time credits offering no incentive, he could have let himself succumb to the violence and drug use that is endemic in our high-security prisons. However, Mr. Owens did just the opposite.

His achievements in prison are far too numerous to list,[6] but they reveal a man who has worked hard to turn his life around. For example, Mr. Owens completed the BOP's Challenge Program, a rigorous one-year "residential, evidence-based, cognitive-behavioral treatment program" available only in high-security prisons. (R.148-1, Progress Report and Certificates, PageID.168); Bureau of Prisons Program Statement 5330.11 at 51 (detailing challenge program), available at https://www.bop.gov/policy/progstat/5330_011.pdf. The program requires "500 contact hours; i.e., face-to-face contact between treatment staff and inmate participants" and ordinarily takes up at least half of each participants' work day. *Id.* at 52. After graduating, "Owens spent an additional two years working as a mentor and group facilitator for other inmates" in the program. (R.148-2, Letter from John Gleeson, PageID.180). He has also taught "courses such as Anger Management,

---

[6] (R. 138, Pro Se Motion, PageID.84-86; R. 148, Brief in Support of Motion for Sentence Reduction, PageID.150-152; R.148-1, Progress Report and Certificates, PageID.156-168; R.148-2, Letter from John Gleeson, PageID.180-181).

Overcoming Criminal Thinking, Accepting Responsibility, and Breaking Barriers." *Id.*

Mr. Owens was also instrumental in developing the curriculum for a program called "O.N.E. W.A.Y (Organizing New Endeavors With America's Youth), which brought at-risk youth into the facility to participate in activities and group exercises." *Id.* at PageID.180-81. The program teaches inmates leadership skills and public speaking so that they can effectively mentor at-risk youth. (R.148-1, Progress Report and Certificates, PageID.159).

BOP staff consider Mr. Owens a "model inmate" with "positive personal character [and] outstanding work evaluations." *Id.* Mr. Owens also "act[s] as a mentor for special need inmates, assisting them in everyday activities." *Id.* Because of his exemplary record, BOP staff applied for a variance on his behalf so that he could be moved from a high-security prison to a medium-security facility. *Id.*

In sum, Mr. Owens has a truly exceptional record of rehabilitation, providing another compelling reason in support of a sentence reduction. Accordingly, considering all of the relevant circumstances, there are extraordinary and compelling reasons to reduce Mr. Owens's sentence.

## CONCLUSION

The district court erred when it failed to consider the legislative change to § 924(c) as a relevant circumstance. The court compounded this error when it failed

to conduct an individualized assessment of Mr. Owens's motion. Therefore, Mr. Owens asks this Court to remand the case so that the district court may properly consider all the relevant circumstances in determining whether extraordinary and compelling reasons support reducing Mr. Owens's sentence.

                        Respectfully submitted,

                        SHARON A. TUREK
                        Federal Public Defender

                        /s/ Sharon A. Turek
                        SHARON A. TUREK
Dated: December 7, 2020         Federal Public Defender

                        /s/ Pedro Celis
                        PEDRO CELIS
                        Research & Writing Specialist

## COUNSEL'S CERTIFICATE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) and Sixth Circuit Rule 32(a), the undersigned certifies that this Brief contain 5,455 words, as counted by Microsoft Word.

                        /s/ Sharon A. Turek
                        SHARON A. TUREK
                        Federal Public Defender

                        /s/ Pedro Celis
                        PEDRO CELIS
                        Research & Writing Specialist

## CERTIFICATE OF SERVICE

It is hereby certified that a copy of the foregoing was filed electronically on

December 7, 2020, and that a copy was made upon opposing counsel through the

Court's CM ECF system.

/s/ Sharon A. Turek
SHARON A. TUREK
Federal Public Defender

/s/ Pedro Celis
PEDRO CELIS
Research & Writing Specialist

# APPELLANT'S DESIGNATION
# OF RECORD FROM DISTRICT COURT

Appellant, pursuant to Sixth Circuit Rule 30(g)(1)(A), hereby designates the following filings in the district court's record as items relevant to the disposition of this appeal.

### Pleadings

| Docket Entry No. | Document | Date | Pg. ID # |
|---|---|---|---|
| N/A | Docket Sheet | N/A | N/A |
| R. 8 | Indictment | 09/25/2002 | N/A |
| R. 20 | First Superseding Indictment | 10/24/2002 | N/A |
| R. 39 | Second Superseding Indictment | 08/29/2003 | N/A |
| R. 51 | Third Superseding Indictment | 01/06/2004 | N/A |
| R. 70 | Jury Verdict | 02/10/2004 | N/A |
| R. 138 | Pro Se Motion | 02/19/2019 | 81-90 |
| R. 143 | Order Appointing Counsel and Setting Briefing Schedule | 03/27/2019 | 96 |
| R. 148 | Brief in Support of Motion for Sentence Reduction | 07/29/2019 | 131-155 |
| R. 148-1 | Progress Report and Certificates | 07/29/2019 | 156-168 |
| R. 148-2 | Letter from John Gleeson | 07/29/2019 | 169-183 |
| R. 149 | Government's Response to Motion for Sentence Reduction | 10/24/2019 | 184-206 |
| R. 153 | Order Denying Motion | 11/09/2020 | 236-238 |
| R. 154 | Notice of Appeal | 11/19/2020 | 239 |

### Transcripts of Hearings

| Docket Entry No. | Document | Date | Pg. ID # |
|---|---|---|---|
| R. 144 | Resentencing Transcript | 06/24/2019 | 114-126 |

26

**<u>Confidential Documents</u>**

| Docket Entry No. | Document | Date | Pg. ID # |
|---|---|---|---|
| R. 93 | SEALED Presentence Investigation Report | 05/21/2004 | N/A |